UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHENELL L. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:25-CV-300-PPS-AZ |
| | ) |
| ERIE INSURANCE GROUP, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Chenell Smith applied for a position as a principal agent with Erie Insurance Exchange (named in the operative complaint as Erie Insurance Group). As part of its review of her application, Erie ran a criminal background check on Smith and acquired a copy of her credit report. Erie first told Smith it had denied her application because of her criminal record but later amended its reasoning to concerns with her credit and employment history. In this case which Smith brought *pro se*, she says Erie's shifting justifications demonstrate actionable discrimination, negligence, emotional distress, and violations of the Fair Credit Reporting Act. Erie moved to dismiss Smith's claims in full. For the reasons that follow, Erie's motion to dismiss is granted in part and denied in part.

**Background**

For purposes of this opinion, I take all well-plead facts as true. This includes the facts in Smith's response brief to the extent they are consistent with her operative complaint. *See Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002)

1

(noting on a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (citing Fed. R. Civ. P. 10(c)).

Smith filed her original complaint in this case on July 3, 2025. [DE 1.] That version of the complaint asserted claims under the Fair Credit Reporting Act ("FCRA"), defamation/negligent misrepresentation, race and gender discrimination, data privacy violations, and negligence. Before Erie answered her original complaint, Smith filed an amended complaint on July 23, 2025. [DE 5.] Smith's Amended Complaint omits many of the factual allegations and attachments included in her original complaint. She also reorganized and dropped some of the claims in her original complaint, opting instead to allege (1) race discrimination in violation of 42 U.S.C. § 1981, (2) violations of 15 U.S.C. § 1681b and § 1681m of the FCRA, (3) negligence, and (4) intentional infliction of emotional distress.

Smith's Amended Complaint is now the operative document in this case. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016). Smith dropped her claims for defamation/negligent misrepresentation and data privacy violations from her Amended Complaint, so I need not address them. *Id.* ("[A]ny claim in [the *pro se* plaintiff's] original complaint not included in her amended complaint is extinguished."). This background context is important because in addition to her waived claims, Smith cannot rely on any allegations in her original complaint to cure defects in her Amended Complaint unless she specifically incorporated those allegations in her new pleading. *See Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995).

Smith says Erie recruited her to apply for a position as a "principal agent." [DE 5 at 1.] As best I can tell, this position is akin to an independent contractor or agent relationship with Erie. [*See* DE 19 at 1.] To review her application, Erie seems to have pulled Smith's credit report and run a background check. [DE 5 at 1, 4.] Smith's Amended Complaint provides sparse detail about what happened next.[1] It appears Erie sent Smith an "adverse action notice" that denied her application based on her criminal record. [*Id.* at 1, 3.]

After it sent Smith the "original adverse action notice", Erie apparently sent Smith a July 2, 2025, follow-up letter. [*Id.* at 3.] In that letter, Smith says Erie told her its original adverse action notice mistakenly said Smith had a criminal record. [*Id.* 3–4.] Erie now said it had denied her application because of her credit issues, missing employment history, and "business plan concerns." [*Id.* at 1.] Erie seems to have told Smith that her business plan envisioned her processing far fewer applications (for what, Smith does not say) than what Erie expected for the principal agent position. [*Id.* at 5.] Smith claims Erie manufactured these new reasons for denying her application after it determined Smith did not in fact have any criminal history.

Finally, Smith also vaguely references a July 7, 2025, disclosure from Erie of a

---

[1] Unfortunately, Smith attached documents and included allegations in her original complaint that fill in these details. Smith omitted these factual allegations from her Amended Complaint, however, which supersedes her original complaint as the source of factual allegations from which this Court can draw. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–05 (7th Cir. 1998) ("[F]acts not incorporated into the amended pleading are considered *functus officio* . . . . [i]f certain facts or admissions from the original complaint become *functus officio*, they cannot be considered by the court on a motion to dismiss the amended complaint. A court cannot resuscitate these facts when assessing whether the amended complaint states a viable claim."). That said, many of Smith's allegations in her Amended Complaint appear to reference the core allegations and documents referenced in her original complaint. Where it is appropriate, I will incorporate these allegations and facts.

cybersecurity incident that she says raises questions about the potential exposure, misuse, or inaccurate reporting of her personal information. [*Id.* at 1.]

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In addition, as is relevant here, I am mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

**I.   Race Discrimination Claim (42 U.S.C. § 1981) – Count I**

Section 1981 prohibits racial discrimination in the making and enforcing of contracts and "provides a federal remedy against racial discrimination in private employment." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 789 (7th Cir. 2019).

To state a claim under § 1981, plaintiffs must allege "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Off. Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996). Smith must also show that "race was a but-for cause of [her] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020).

Erie concedes Smith's Amended Complaint alleges facts that satisfy the first and third elements of her § 1981 claim. Smith is a black woman who sought to enter a contractual relationship with Erie as a principal agent. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (recognizing "§ 1981 protects the would-be contractor along with those who already have made contracts"). Instead, Erie argues Smith has alleged no facts that plausibly suggest Erie intentionally discriminated against her because of her race. Smith says Erie's cited reasons of credit issues, missing employment history, and concerns with her proposed business plan were "pretextual and discriminatory." [DE 5 at 2.] In her Response, she says "Erie cited false reasons for denial, including fabricated criminal history, which plausibly suggests discriminatory intent." [DE 20 at 2.]

Smith's allegations are thin, but "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Twombly*, 550 U.S. at 555. This is especially true in the case of a plaintiff, like Smith, that represents themselves *pro se*. *See Erickson*, 551 U.S. at 94. For pleading purposes, cases brought under Section 1981 and Title VI are treated similarly. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir.

5

2007). The Seventh Circuit made it clear well after *Twombly* was decided that a "complaint alleging [race] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [race]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (internal quotations and citation omitted). Smith's Amended Complaint meets that low bar.

Smith alleges Erie changed the reasons it denied her application for the principal agent position. First, Erie cited concerns with her criminal history, but that turned out to be non-existent. Erie then cited an entirely different reason to deny her application: concerns with her credit history, employment history, and proposed business plan. But in a July 14, 2025, letter attached to her Amended Complaint, Smith claimed that Erie misled her as to the requirements for proposed business plans. [DE 5 at 5.] Smith notes that the sample business plan provided by Erie "includes modest projections of 18 personal lines apps per month and 10 commercial policies per year [,] far below the 250-application figure Erie is now citing as a baseline." [*Id.*] Smith's allegations concerning Erie's shifting justifications for denying her application and its post-hoc business plan requirements plausibly state a § 1981 discrimination claim.

## II.     FCRA Claim – Count II

Smith next alleges Erie violated two provisions of the FCRA: 15 U.S.C. § 1681b and § 1681m. First, it will be helpful to lay some groundwork for this claim. The FCRA establishes certain rules for prospective employers, such as Erie, that conduct background checks and pull consumer reports on applicants. Three distinct actors are involved in this process: "A consumer reporting *agency* aggregates data and creates

6

the report. Agencies then supply reports to *users* (*e.g.*, employers), which rely on them to decide the fate of *consumers* (*e.g.*, job applicants)." *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 696 (7th Cir. 2018) (emphasis in original).

    First up are Smith's allegations of a violation of Section § 1681b, which:

> [P]rohibits a prospective employer from procuring a consumer report for employment purposes unless certain procedures are followed: (i) a clear and conspicuous disclosure has been made in writing to the job applicant at any time before the report is procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes (commonly known as the "stand-alone disclosure requirement"); and, (ii) the job applicant has authorized in writing the procurement of the report.

*Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (citing 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii)). I'll refer to the first requirement as the "disclosure requirement" and the second as the "authorization requirement." Smith does not explain how Erie violated either requirement. In fact, Smith's original complaint attached a "Fair Credit Reporting Act Disclosure & Authorization" form dated April 28, 2025, that suggests Erie satisfied both requirements. *See Slaney v. The Intern. Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) ("[T]he court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim."). Smith has alleged no facts to plausibly suggest a violation of either the disclosure or authorization requirements.

    Smith also alleges Erie issued an "incorrect adverse action notice", which draws on a separate requirement from the FCRA. The FCRA establishes rules for two types of adverse action notices that employers may issue at different steps when reviewing an applicant's consumer report. First, "before taking any adverse action based in whole or in part on" a consumer report, a prospective employer must provide the

individual with a pre-adverse action notice. 15 U.S.C. § 1681b(b)(3)(A). The pre-adverse action notice must include (1) a copy of the consumer report and (2) a summary of the applicant's rights under the FCRA. *See id.*

Erie argues without explaining that it was not required to provide such a pre-adverse action notice to Smith. In any event, Erie says it provided a pre-adverse action notice to Smith that complied with the requirements of Section 1681b(b)(3)(A). Regardless, Smith has not stated a claim that Erie failed to provide her with a pre-adverse action notice (if one was even required). Instead, she alleges Erie issued an "incorrect adverse action notice", [DE 5 at 1], and "furnished and relied upon an inaccurate consumer report in denying her appointment" [DE 20 at 2]. But the accuracy of an adverse action notice provided by a user, such as Erie, is not an actionable claim under Section 1681b(b)(3)(A). The FCRA "does not similarly link accuracy concerns and the disclosure obligations imposed on 'users.'" *Robertson*, 902 F.3d at 696. Indeed, the section of the FCRA concerning "'Requirements on users of consumer reports' refers to accuracy only to require that users instruct consumers to lodge accuracy-based disputes with the agency." *Id.* (citing 15 U.S.C. § 1681m(a)(4)(B)).

Smith does not allege Erie failed to provide a pre-adverse action notice and alleges only that Erie's initial reason cited in its first adverse action notice (a reference to a criminal record that did not exist) was inaccurate. This is not an actionable theory under Section 1681b(b)(3)(A), so Smith has failed to state a claim. It is not even clear to the Court whether this notice was a "pre-adverse action" notice or better classified as

8

a "adverse action notice." As will soon be discussed, under either framing Smith has failed to state a claim.

Second, the FCRA also requires entities that take adverse action based on the information in a consumer report to provide an adverse action notice to the consumer that contains certain information. *See* 15 U.S.C. § 1681m(a). Erie goes to great lengths in its motion to dismiss to argue that it provided sufficient adverse action notice. This argument is better served for summary judgment. But to the extent Smith seeks to assert a claim under Section 1681m(a), it fails for a far simpler reason (and one surprisingly not raised by Erie). Section 1681m(h)(8) prohibits private causes of action to enforce the adverse action requirement. *See* § 1681m(h)(8). Indeed, the Seventh Circuit has definitively held that "[t]he unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m." *Perry v. First Nat. Bank*, 459 F.3d 816, 823 (7th Cir. 2006). Smith cannot state a claim under 15 U.S.C. § 1681m.

### III.     Negligence Claim – Count III

As best the Court can tell, Smith's negligence claim is predicated upon her allegations that Erie may have "mishandl[ed] her background data" and exposed, misused, or inaccurately reported such data. [DE 5 at 1.] Smith references no federal statute or state common law for her negligence claim. To the extent Smith is attempting to assert a negligent violation of the FCRA, she has failed to do so for the reasons articulated above. In the interest of liberally construing Smith's Amended Complaint, the Court will analyze her negligence claim under Indiana common law, which

contains three elements: "(1) duty owed to plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) compensable injury proximately caused by defendant's breach of duty." *Bader v. Johnson*, 732 N.E.2d 1212, 1217 (Ind. 2000).

Smith fails to allege facts to support a duty owed by Erie, a breach of that duty, or compensable injury. Concerning a duty owed by Erie, federal district courts interpreting Indiana law have found no common law "duty to safeguard private information[.]" *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F.Supp.3d 704, 719 (S.D. Ind. 2024). And, of course, "[a] defendant cannot be found negligent where there is no duty to the plaintiff." *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638 (Ind. Ct. App. 2015). Smith has failed to state a claim for negligence.

### IV.    Intentional Infliction of Emotional Distress Claim – Count IV

Finally, Smith alleges a claim for intentional infliction of emotional distress ("IIED"). She cites no source of law for this claim except in her Reply when she appears to concede to construction of her IIED claim under Indiana law. [*See* DE 20 at 3.] In Indiana, an IIED claim arises when "a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 523 (Ind. Ct. App. 2001). The requirements to prove this tort are "rigorous" because the conduct must "exceed[] all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Id.*; *Sandoval v. Franciscan All., Inc.*, Case No. 2:22-cv-218, 2024 WL 340765, at *7 (N.D. Ind. Jan. 29, 2024) ("Conduct is found to be extreme

10

and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (citation omitted).

Smith's Amended Complaint does not include allegations of the "extreme and outrageous" conduct she claims Erie engaged in. A liberal construction of her Amended Complaint, guided by her Reply, suggests Smith complains of Erie's reference to criminal history in its original adverse action notice and shifting explanations for denying her the principal agent position. These vague allegations do not "smack of the type of conduct needed to colorably state a claim for intentional infliction of emotional distress under Indiana law." *Kesel v. Martin*, Case No. 2:12-cv-139, 2014 WL 888884, at *4 (N.D. Ind. Mar. 5, 2014) (dismissing IIED claim premised on allegations of "hostile environment consisting of reprimands, harassment, tampering with [plaintiff]'s work product, denials of promotions and termination"); *Thornton v. CMB Entm't, LLC*, 309 F.R.D. 465, 470–71 (S.D. Ind. 2015) (dismissing IIED claim that alleged "only a general plan to embarrass, humiliate, and exclude [plaintiff]").

## Conclusion

For the aforementioned reasons, Erie Insurance Exchange's (named in the Amended Complaint as Erie Insurance Group) Motion to Dismiss [DE 18] is **GRANTED IN PART AND DENIED IN PART**.

(1) Counts II, III, and IV are DISMISSED WITHOUT PREJUDICE; and

(2) Count I remains pending.

**SO ORDERED.**

11

ENTERED: February 11, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT